IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDRA GROUP, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-mc-11-K-BN |
| | § | |
| JDA SOFTWARE GROUP, INC., | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |
| | § | |
| PROJECKT202, LLC, | § | |
| | § | |
| Movant. | § | |

**MEMORANDUM OPINION AND ORDER ON MOTION TO QUASH
SUBPOENA TO PRODUCE DOCUMENTS
AND CROSS-MOTION TO COMPEL**

projekt202, LLC ("p202") has filed a Motion to Quash Subpoena to Produce Documents, *see* Dkt. No. 1, directed to a subpoena issued by counsel for Defendant JDA Software Group, Inc. ("Defendant" or "JDA") commanding p202 to produce documents at Defendant's counsel's office in Dallas, *see* Dkt. No. 1-2. Defendant filed a response and a Cross-Motion to Compel, *see* Dkt. Nos. 10 & 11, and United States District Judge Ed Kinkeade referred both motions to the undersigned United States magistrate judge for determination, *see* Dkt. No. 17. p202 filed a response to the Cross-Motion to Compel and reply in support of its motion to quash, *see* Dkt. No. 16, and Defendant filed a reply in support of its Cross-Motion to Compel, *see* Dkt. No. 19. The Court held oral argument on the motions on April 1, 2015. *See* Dkt. No. 20.

The Court now GRANTS in part and DENIES in part each motion [Dkt. Nos. 1 & 11] for the reasons explained below.

## Background

On or about October 29, 2014, p202 was served with a third-party document subpoena under Federal Rule of Civil Procedure 45 in the matter styled and numbered *Andra Group, LP v. JDA Software Group, Inc.*, Case No. 2:13-cv-02528-SRB, in the United States District Court for the District of Arizona. *See* Dkt. No. 1-2. The underlying case involves claims for breach of contract in connection with certain business e-commerce software and services and related business dealings between Plaintiff Andra Group, LP ("Andra") and Defendant JDA and RedPrairie Corporation (a company that JDA acquired). *See* Dkt. No. 1 at 1. p202 is not a party in that case.

According to Defendant, in the lawsuit, "Andra is seeking damages against JDA in the millions of dollars on contract-related claims, arising out of an enterprise-level software implementation project," and, "[f]or its part, JDA has denied Andra's allegations and counter-claimed for more than half a million dollars it is owed for software licenses granted and professional services rendered by JDA to Andra." Dkt. No. 10 at 1.

Defendant's subpoena includes Definitions and Instructions—including detailed instructions on the method of production of electronically stored information ("ESI") —and 17 numbered Requests for Production. *See* Dkt. No. 1-2. The date for compliance with the subpoena initially was November 24, 2014, but Defendant agreed, through

counsel, to several extensions of the date of compliance with the subpoena, ultimately agreeing to a final date of compliance of 5:00 p.m. on January 30, 2015. *See id.* at 2.

On the extended date for compliance, January 30, 2015, p202 filed its Motion to Quash Subpoena to Produce Documents. *See* Dkt. No. 1. p202 reports that, on or about January 16, 2015, it "produced in excess of 11,500 discrete documents numbering nearly twenty-one thousand pages, in both native and PDF formats, in a good faith effort to comply with the vast majority of the document requests in the Subpoena." Dkt. No. 1-1 at 6 of 32 (emphasis removed). p202 argues that "the subpoena places an undue burden on a fully cooperative non-party witness" and therefore "violates Federal Rule of Civil Procedure 45(d) and should therefore be quashed" or, "[i]n the alternative, JDA Software should be ordered to compensate p202 for the extraordinary expense and investment of time that would be required to fully respond to the subpoena, including payment of p202's reasonable attorney's fees." *Id.* p202 further explains that, "[i]n light of p202's voluminous production to date, the elements of each discrete request in the Subpoena from which p202 now seeks protection through the instant Motion are those that seek (1) emails through the broad-form request that identify no custodians or date ranges (essentially obligating p202 to review virtually every email account for every custodian who may have some involvement in the underlying project), and (2) the production of documents already produced, but in electronic or digital form (an unnecessarily duplicative, expensive, and unduly burdensome request as part of JDA Software's free-wheeling fishing expedition)." *Id.* at 6-7 of 32.

Defendant opposes the motion to quash and cross-moves to compel p202's full compliance with the subpoena's document requests and instructions on the method of producing ESI. *See* Dkt. Nos. 10 & 11. Defendant asserts that, for the project at the heart of the lawsuit at issue, p202 "acted as Andra's IT consultant, project manager, delegatee of contractual responsibilities, and principal point of contact with JDA"; that "p202 was no bystander to the transactions at the heart of the Arizona Lawsuit"; that "p202 played an active and integral role and its project-related failures are central to JDA's affirmative defenses to Andra's claims"; and that, "while p202 is not, itself, a party to the Arizona Lawsuit, the practically-interwoven relationship between Andra and p202 in this instance makes p202 far from what might be considered an 'ordinary' non-party." Dkt. No. 10 at 1-2. Defendant asserts that, "[b]ecause p202 was such an active participant in the underlying project – and was allegedly responsible for its demise, under JDA's theory of the case – much of the information germane to JDA's claims and defenses in the Arizona Lawsuit is to be found in the care, custody and/or control of – and only that of – p202" but that p202 has "produced only a fraction of the information sought, and intentionally produced that information in such a degraded form as to fall far short of both (i) standard production protocol for electronically-stored information and (ii) the basic requirements of Rule 45 of the Federal Rules of Civil Procedure." *Id.* at 2.

Defendant asks the Court to deny p202's motion to quash in its entirety and to grant its Cross-Motion to Compel and issue an order "that requires p202 to (i) comply with the Subpoena and (ii) pay JDA's reasonable and necessary attorneys' fees and

costs associated with the effort to secure p202's compliance." *Id.* at 3; *see also* Dkt. No. 11 at 1-3. More specifically, Defendant requests "an order granting Defendant's Motion and compelling production by p202 of the information set forth in the Subpoena (as modified and described in Defendant's Brief [Dkt. No. 12]) and awarding Defendant its reasonable and necessary attorneys' fees and costs." Dkt. No. 11 at 3.

Defendant's proposed modification to the subpoena's document production requirements calls for p202 to "search its Office 365 Server solely for [p202's] internal (or *intra*-company) documents, including emails, relating to the project," using, "[t]o facilitate the search, ... the names of the relevant p202 custodians," produce those documents, and "re-produce the content of its ShareFile Account, less the Bates-ranges specified in JDA's January 28, 2015 proposal, in accordance with the standard ESI protocol specified in the subpoena." Dkt. No. 12 at 4 n.1 of 30, 7 of 30. Defendant's January 28 proposal, on which Defendant's Cross-Motion to Compel asks the Court to focus, calls for p202 to locate and produce from p202's Office 365 server "only its non-privileged *internal* documents, including but not limited to communications between or among p202 personnel, referring or relating to the project" and provides that "[a]ny production from the 365 Server will have to comply with the standard ESI preservation, collection, and processing protocols" and that "JDA would reserve its right to seek a more robust production from p202 – i.e., non-internal documents – if Andra's forthcoming production lacks relevant documents that are reasonably expected to be in p202's possession as well." Dkt. No. 13-3 at JDA App. 0354. The proposal further calls for p202 to "modify its production of ShareFile Account documents to

remedy the [issues that Defendant has identified] using standard ESI preservation, collection, and processing protocols" but provides that p202 "need not reproduce documents that correspond to the [a specified] Bates ranges." *Id.* at JDA App. 0355.

## Legal Standards

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on a third party, such as p202, as well as motions to quash or modify or to compel compliance with such a subpoena. *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Federal Rule of Civil Procedure 34 governs requests for production of documents and ESI from a party and explains that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person...." FED. R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena."). Rule 45(a)(1)(C) further provides that "[a] subpoena may specify the form or forms in which electronically stored information is to be produced." FED. R. CIV. P. 45(a)(1)(C).

Under Rule 45, the following "procedures apply to producing documents or electronically stored information: (A) Documents. A person responding to a subpoena

to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand. (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form." FED. R. CIV. P. 45(e)(1)(A)-(C). But "[t]he person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost"; "[o]n motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost"; "[i]f that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of [Federal Rule of Civil Procedure] 26(b)(2)(C)"; and "[t]he court may specify conditions for the discovery." FED. R. CIV. P. 45(e)(1)(D).

Rule 45(d)(1) mandates that " [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party

or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). Further, Rule 34 provides that a document request "must describe with reasonable particularity each item or category of items to be inspected" or produced, FED. R. CIV. P. 34(b)(1)(A), and, although Rule 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c), this reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, *see generally Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B). "The serving party may agree to extend the deadline to respond to a subpoena, including the deadline to serve written objections." *Shaw Group, Inc. v. Zurich Am. Ins. Co.*, Civ. A. No. 12-257-JJB-RLB, 2014 WL 1783955, at *4 (M.D. La. May 5, 2014).

"'The failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections,'" as does failing to file a timely motion to quash. *Isenberg*, 661 F. Supp. 2d at 629 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)) ("If Isenberg believed the subpoenas were objectionable, she could have argued that she has a right or privilege

in relation to the documents and filed a motion to quash the subpoenas. Isenberg did not file such a motion and, therefore, waived any objection she could have raised therein." (citations omitted)); *accord La. Generating, L.L.C. v. Ill. Union Ins. Co.*, Civ. A. No. 10-516-JJB-SCR, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege." (footnote citing cases omitted)). But courts have also held that "'the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown.'" *Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 WL 1630754, at *9 (W.D. Va. Apr. 23, 2014) (quoting *Leader Techns., Inc. v. Facebook, Inc.*, No. C1080028MISCJWHRL, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2, 2010)) "Unusual circumstances warranting consideration of objections have included those 'where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.'" *Id.* (quoting *Leader*, 2010 WL 761296, at *2).

"If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B). Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production

of documents, pending a court order. *See Hodnett v. Smurfit-Stone Container Enters., Inc.*, Civ. A, No. 09-1256, 2010 WL 3522497, at *1 n.3 (W.D. La. Sept. 2, 2010).

The target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

On a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) ( internal quotation marks omitted). The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors:

(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Generally speaking, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Thus, "'[u]nder the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged,'" and "[d]iscovery requests are relevant when they seek admissible evidence or evidence that is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Wiwa*, 392 F.3d at 820 (quoting *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990)). "Whether [a requesting party's] discovery requests [to a non-party served with a subpoena] are relevant thus turns on whether they are 'reasonably calculated'

to lead to evidence admissible as to [its] claims" or defenses against its opponent in the underlying case. *Id.*

Further, the Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *accord Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

## Analysis

p202 does not challenge the service of Defendant's subpoena or the subpoena's compliance with Federal Rule of Civil Procedure 45(a)'s technical requirements. And, under Rule 45(d), p202 and Defendant properly filed their motions in this Court, which is the court for the district where compliance is required. *See* Dkt. No. 1 at 2; Dkt. No. 1-1 at 7 of 32; Dkt. No. 1-2.

p202 instead objects that further compliance with the subpoena's document requests imposes an undue burden on p202 because the subpoena requires "p202 to search for and produce a wide array of documents – including ESI – responsive to seventeen different descriptive categories, with dozens of subparts." Dkt. No. 2 at 6 of 32 (footnote omitted). p202 therefore request an order quashing the subpoena because

it "places an undue burden on a fully cooperative non-party witness" and "violates Federal Rule of Civil Procedure 45(d)" or, in the alternative, an order requiring JDA "to compensate p202 for the extraordinary expense and investment of time that would be required to fully respond to the subpoena, including payment of p202's reasonable attorney's fees." *Id.*

p202's resistance to further complying with Defendant's subpoena apparently turns at least in part on p202's being a non-party to the litigation where, according to p202, Defendant has chosen not to sue p202 although Defendant's counsel likely could have found a way to bring p202 into the case involving Andra. Taken to its extreme, p202's appears to wish Rule 45 out of existence.

But Rule 45 "explicitly contemplates the use of subpoenas in relation to non-parties." *Isenberg*, 661 F. Supp. 2d at 629. And, as another court observed when faced with somewhat similar objections to compliance, "transparency and collaboration is essential to meaningful, cost-effective discovery," and a non-party's "attempt to stand outside of these tenets because of its third-party status is unpersuasive." *Apple, Inc. v. Samsung Electronics Co. Ltd.*, No. 12-CV-0630-LHK (PSG), 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013). "Although [a non-party] should not be required to 'subsidize' litigation to which it is not a party, [the non-party cannot] confuse[] undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. Third-party status does not confer a right to obfuscation or obstinacy." *Id.* (footnote omitted; citing The Sedona Conference, *The Sedona Conference Commentary on Non–Party Production & Rule 45 Subpoenas*, 9 SEDONA CONF. J. 197,

198-99 (2008)). Thus, once properly served with a Rule 45 subpoena, a non-party is subject to discovery obligations that the subpoena imposes, as limited by Rule 45's protections that the non-party is entitled to invoke.

For its part, Defendant appears to seek to minimize the effect of p202's non-party status in this context, by asserting how involved p202 allegedly was in the transaction underlying the lawsuit between Andra and JDA. But, except perhaps insofar as p202's role in the underlying transaction may be relevant to potential cost-shifting considerations, no amount of Defendant's asserting that p202 is not really a non-party will make it so for Rule 45's purposes, where p202 simply has not been named in the underlying lawsuit and therefore is not a party to it. *See generally Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999) ("Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend. Unless a named defendant agrees to waive service, the summons continues to function as the sine qua non directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.").

Among Rule 45's protections for a non-party are the opportunities to file written objections pursuant to Rule 45(d)(2)(B) and a motion to quash or modify under Rule 45(d)(3)(A). Here, Defendant does not dispute that p202 filed a timely motion to quash under the circumstances. *See generally Bell*, 2014 WL 1630754, at *9-*10 (discussing what is "timely" under Rule 45(d)(3)). But p202's counsel admits that p202 has not

served written objections to the subpoena, even after Defendant agreed to extend the date for compliance, and Defendant does complain that p202 "refus[ed] to serve formal (or even informal) written objections of the sort it places in its brief so that JDA could evaluate and address them." Dkt. No. 12 at 5 of 30; *see also* Dkt. No. 19 at 2. But the record is also clear that counsel for p202 and for Defendant were in contact as to p202's compliance prior to p202's moving to quash, and Defendant does not actually assert that p202 waived its objections to the subpoena by failing to comply with Rule 45(d)(2)(B)'s requirement to serve written objections. Accordingly, under the unusual circumstances present here, the Court finds that p202's failure to serve written objections does not constitute a waiver of its objections.

p202 objects that the subpoena's document requests are overbroad and would impose an undue burden on p202 to fully respond. Defendant's counsel candidly admitted at oral argument that the subpoena is intended to cover every document that p202 has related to the project with Andra that is at the heart of the underlying lawsuit. Defendant's counsel also reported that Defendant served a very broad subpoena in part out of a concern that a subpoena was necessary to trigger preservation obligations by p202 as a non-party. But, whatever Defendant's intentions in serving the subpoena, a Rule 45 subpoena is a discovery device that may command the production of documents and, at this stage, the Court is concerned with Defendant's subpoena's compliance with Rule 45's requirements and what, if any, documents p202 must produce in response.

Where p202 objects to the subpoena as unduly burdensome and facially overbroad, the Court must consider the facts of the case, such as the nature and importance of the litigation, and consider (1) the relevance of the information requested; (2) Defendant's need for the requested documents; (3) the breadth of the document requests; (4) the time period covered by the requests; (5) the particularity with which Defendant describes the requested documents; and (6) the burden imposed, including the expense and inconvenience to the non-party p202. *See Wiwa*, 392 F.3d at 818.

Turning first to the nature and importance of the underlying litigation, the relevance of the information requested, and Defendant's need for the requested documents, the Court finds that these factors weigh against sustaining p202's undue burden objections. Defendant asserts that the documents and ESI that it seeks exist in p202's possession exclusively and bear directly on JDA's affirmative defenses in the underlying litigation, in which it asserts, in response to Andra's breach of contract claims, defenses for which p202's conduct comprise much of the factual predicate.

Defendant explains that "[t]he gravamen of [Andra's] Complaint is that RedPrairie and JDA breached the software license agreements and the ["Statement(s) of Work" entered into between Andra and Defendant] because [JDA] purportedly could not and did not fulfill its duties to implement the 'promised' IT platform," that "Andra demands an award of several million dollars in purported actual and 'lost revenues' damages, including the $800,000 purportedly attributable to the fees of its 'technology consultant'" and "multiples of that sum in punitive damages under the theory of

-16-

intentional breach," and that, "[a]mong JDA's affirmative defenses to Andra's claims are that the retailer, through p202 and directly, engaged in conduct that served to excuse RedPrairie's performance" and "that Andra, through p202 and directly, rendered performance by RedPrairie impossible or impracticable and otherwise frustrated the purpose of the agreements." Dkt. No. 12 at 12 of 30. Defendant contends that, "[a]s the project proceeded, it became clear that p202 could not or would not satisfactorily execute its management responsibilities or the other key contractual duties that Andra had delegated to it" and that, "[a]mong the categories of problems that appear to have arisen during and contributed to the demise of the project are the following: a. fundamental differences and disputes between Andra and p202 in their respective understandings of the nature and scope of the project as well as the scope of their respective responsibilities; b. delays in the negotiation and/or consummation of a master services agreement and/or statements of work by and between Andra and p202 in connection with the project; c. delays in p202's requests for or receipt of requisite input, answers, or approvals from Andra pertaining to important issues and questions as they arose during the project; d. failures by Andra and/or p202 to devote an adequate number of qualified personnel to the project or to allow all requisite personnel to attend regularly scheduled meetings of the stakeholders; e. failures by p202 to timely or adequately communicate critical product- and/or project-related information to Andra, to gain a proper understanding of Andra's objectives and capacity, and/or to properly manage Andra's expectations; f. demands by Andra and/or p202 for substantial additions to and modifications of the Professional Services

contemplated in the SOWs and resistance by Andra to paying for such additions and modifications; g. failures by Andra to allow p202 to exercise overall project direction responsibility as contemplated in the SOWs and/or unwillingness or inability on the part of the IT specialist to exercise such responsibility; h. failures by Andra and/or p202 to perform Andra's contractual obligations on a timely basis or to perform those obligations satisfactorily; i. insufficient experience on the part of p202 in the management of a large enterprise-level software implementation project like the Andra project; and, j. inadequate capacity on the part of p202 in terms of time, personnel, and/or other resources to manage the project and to timely and competently perform the contractual duties delegated to it." *Id.* at 9-10 of 30.

The Court finds that, although it did not have the burden to do so, Defendant has demonstrated its needs for most of the categories of documents that the subpoena requests and that these documents are important for Defendant to be able to litigate its defenses in the underlying lawsuit. As a general matter, the Court can understand why Defendant at least wants to see every document that p202 has related to the project at issue with Andra given the scope of p202's involvement in the project and Defendant's allegations related to p202 in the underlying case against Andra.

But p202 asserts that Rule "45(d) makes quite clear that all nonparties are entitled to certain protections from overly burdensome and expensive third-party discovery requests, and goes so far as to mandate sanctions for parties or attorneys who fail to ensure that such protections are given" and that "JDA has failed to meet that duty in this case," where, "[r]ather than serving discovery requests that were

narrowly tailored to seek only necessary documents not otherwise obtainable from a party to the litigation, and to do so in a manner that would spare undue expense to p202, JDA served an incredibly broad and burdensome subpoena on p202 before it had even obtained Andra Group's responses to written discovery, seeking roughly fifty separate subcategories of documents and related electronically-stored information (ESI)." Dkt. No. 16 at 3 (emphasis in original). And Defendant admits that it is seeking discovery of the same documents from its opponent, Andra, and that Andra should have any relevant communications that Andra had with p202 related to the project. Where that discovery and Andra's document production is still ongoing, Defendant's need to have a non-party search for and produce those communications is – at least absent a showing that Andra has not produced and will not be able to produce all of those communications – much lower for purpose of this analysis. Defendant can revisit this issue once Andra's production is complete if it believes that, at that time, it can show that production of what should be the same documents by p202 likely will reveal omissions or missing documents from Andra's production.

Turning to the document requests' breadth, the time period that they cover, and the particularity with which Defendant describes the requested documents, the Court finds that the document requests are undisputedly quite broad and are not limited to a specified time period.

Defendant concedes that it is seeking every document that p202 has related to the project, and its requests are framed accordingly, providing examples that, while often themselves rather specific, are modified by "including but not limited to" and the

use of the expansively-defined phrase "referring or relating to." *See* Dkt. No. 1-2. And, more specifically, Request for Production ("RFP") No. 10 requests "[e]ach document ... referring or relating to any of the operative allegations of the Complaint, a true and correct copy which is appended hereto, including but not limited to the following" specific allegations from Andra's complaint, while Request for Production Nos. 16 and 17 are, by Defendant's counsel's admission, catch-all document requests expressly meant to encompass any document that p202 has related to the project and the case between Andra and JDA that are not specifically covered by the other 15 RFPs. *See id.*

RFP No. 10 requires p202 to examine each allegation in another party's complaint in a lawsuit to which it is not a party and decide what, if any, documents it may have that refer or relate to those allegations that Andra – not p202 – has made. The burden imposed by RFP Nos. 16 and 17 is both more and less, insofar as these requests as written clearly tell p202 to produce any and all communications – or documents referring or relating to any communications – "among p202, on the one hand, and Andra, RedPrairie, JDA, and/ or any third party, on the other, regarding the Project as a whole or any aspect, feature, and/ or component thereof" as well as "any notes and/ or any intra-company memoranda, reports, diaries, emails, or other communications of p202 personnel, representatives, or agents" – or documents referring or relating to any such notes or intra-company documents – "regarding any aspect, component, or feature of the Project." *Id.*

As to the burden imposed, including the expense and inconvenience to the non-party p202, p202 has submitted two affidavits in support of its arguments that

further production in response to the subpoena will be unduly burdensome because "p202 does not have an in-house Information Technology employee on payroll" and, "rather, ... utilizes a cloud-based platform (Microsoft Office 365) as its application for e-mail management and storage" and because, as a result, "requiring p202 to conduct a search for e-mail communications responsive to the various requests in the subpoena would require the company to engage in exhaustive searches of e-mail accounts for at least six separate individuals (two of whom are no longer employed by p202) who may be relevant custodians, all without the services of an inhouse dedicated IT professional." Dkt. No. 1-1 at 10 of 32. p202 further argues that, because it "does not have either a local e-mail server or a dedicated IT support person in-house, the only ways to conduct such a search would be to (1) have each individual custodian spend all the work time required to search through his or her e-mail archives to locate, review, and produce e-mails, or (2) retain a third-party vendor to perform such services." Dkt. No. 16 at 8. According to p202, "[t]he second option would, as a matter of logic, require p202 to spend thousands of dollars out of pocket to retain and pay such a vendor, and to have its e-mail system potentially disabled, limited, or seriously slowed for an unknown period of time so that the vendor could engage in the efforts necessary to search for, review, and extract any responsive e-mails," "[b]ut the first alternative would be just as onerous, if not more so; each p202 employee would be forced to cull through thousands of e-mails to search for, read, and facilitate the production of any e-mail (and, presumably, e-mail attachment or similar communication) even arguably responsive to JDA's vastly overbroad subpoena, a process which, given the number of

employees and the amount of e-mail traffic p202 generates each day, could take days (or, in some cases, weeks) of each employee/e-mail custodian's productive work hours, hours that would otherwise have been spent performing billable, profitable work for p202's clients." *Id.* at 8-9.

Without specifically quantifying the cost and expense of further responding to the subpoena's document requests, p202 contends that, "[g]iven that the average billing rate for p202's personnel is $161.30 per hour, common sense dictates that the hours required for those ten custodians to fully and thoroughly search their e-mail archives, identify potentially responsive e-mails, review those e-mails for privileged or confidential information, and then coordinate their production in electronic form, in response to JDA's 'compromise' on the scope of its subpoena, would easily result in a loss of production and billable work hours to p202 rising well into the thousands of dollars." *Id.* at 9 (citation omitted). p202 estimates that "just the combined work/productive hours spent by only three p202 personnel, in order to comply in part with the JDA Subpoena, has cost the company an estimated five thousand, nine hundred and five dollars ($5,905.00) in lost productivity alone," which "does not include the attorneys' fees and costs incurred by p202 in its efforts to protect itself from JDA's overly-broad subpoena." *Id.* at 11-12.

As for Defendant's proposal to reduce the scope of the subpoena, p202 responds that JDA's "purported ... last-minute 'compromise' ... contained broad, still overly burdensome demands, with only an illusory reduction in burden to p202, that would require p202 to mine its electronic records for a universe of e-mails from a group of

custodians that comprises ten percent of p202's entire workforce, all while expressly 'reserving' its right to seek full enforcement of the entire overbroad subpoena if it felt or suspected that Andra's (not p202's) document production were lacking something." Dkt. No. 16 at 4. And p202 urges the Court to reject Defendant's request to rely on its proposal to limit the subpoena because "[n]othing in Rule 45(d) or elsewhere in the law or rules supports JDA's attempt to avoid liability for serving an overly-broad subpoena without having withdrawn or modified it; rather, the Federal Rules and supporting case law are clear that a subpoena's facial overbreadth is grounds for sanctions." *Id.* at 8 (footnote omitted). p202 further asserts that, "[e]ven so, JDA's purported 'compromise' proposal remains overly broad and impermissibly burdensome," where it "would still require p202 to search for electronic documents, including e-mails and ESI, for a total of fifteen named custodians" and where "[f]ive of those fifteen custodians are no longer employed, or were never employed, by p202" and "even this purportedly narrowed request would still require p202 to conduct a search of the e-mail accounts of ten percent of its current workforce." *Id.* at 8-9 (emphasis removed). p202 further contends that "JDA's own caveats and reservations of rights show that this purported 'compromise' is really no compromise at all" where "JDA not only makes clear that it is not compromising at all on the subpoena's overly-broad scope, but also alerts p202 that, even if it agrees to this still-burdensome demand, JDA intends to subject it to even greater discovery burdens in the event any document production by Andra – who, again, is a party to this case – fails to satisfy JDA's purported needs." *Id.* at 9-10 (emphasis removed).

Finally, while recognizing that modifying a subpoena is generally preferable to quashing it, p202 contends that "such modification would be futile in the present case," where "p202 has already produced thousands of discrete documents, totaling over twenty thousand pages and comprising every non-email document in its possession related to the Andra project at issue in the Arizona Litigation" and "has done so at the cost of thousands of dollars in lost productive hours, and in the meantime has been forced to retain outside counsel to defend itself against much larger, more burdensome, and far more unreasonable expenses and lost time." *Id.* at 12-13. "Put another way, p202 has already done everything that can or should reasonably be expected of it under the Federal Rules to comply with JDA's overly broad, unduly burdensome subpoena." *Id.* at 13.

Defendant responds that "[t]he only 'evidence' that p202 has submitted in support of the generic claim of 'undue expense' is an irrelevant affidavit attesting that the IT specialist maintains its documents in the cloud and has no 'dedicated' IT personnel 'on payroll' to distill responsive documents in compliance with the subpoena"; that, "[b]eyond that, p202 makes no effort to substantiate the claim with evidence regarding the anticipated volume of responsive documents in its possession or the estimated costs associated with having a litigation support vendor preserve, collect, and process them for production"; and that "none of the 'evidence' that p202 has submitted to the Court equips it to determine whether the subpoena subjects p202 to 'undue expense.'" Dkt. No. 12 at 24 of 30. Defendant further responds that p202 has not "satisfied its burden of demonstrating that JDA's subpoena is overbroad," where,

"[w]hile the Individual Requests set forth in [the subpoena] may be thorough, they are commensurate in scope with p202's expansive roles and responsibilities on the project and bear directly on JDA's affirmative defenses and the ten categories of problems identified [in Defendant's brief] as the factual predicate for those defenses" and where, "while JDA stands behind its position that the subpoena was not overbroad before JDA proposed its most recent accommodations on January 28, 2015, the proposed limitation of the subpoena to p202's internal (or intra-company) project-related documents and emails – rather than those exchanged with the other stakeholders – decreased the breadth of the subpoena markedly." *Id.* at 26 of 30.

Defendant further contends that "p202 simply persists in refusing to proffer any evidentiary showing of what it would cost to have an outside vendor preserve, collect, process, and produce the documents called for in JDA's subpoena" and asserts that "p202 only does itself a disservice by revealing the relatively trivial amount of time and costs it has expended in responding to JDA's subpoena" by "devot[ing] 25 hours of staff time at a cost of just $5,905.00 to effect its defective ShareFile production in late January 2015." Dkt. No. 19 at 7.

After carefully considering and weighing all of the relevant considerations in light of the facts of the case, the Court will sustain p202's objections only in part and grant in part and deny in part each of the competing motions as to Defendant's subpoena. Defendant's document requests are, at least in part, facially overbroad. They call for p202 to turn over every document related to p202's project with Andra. They do so without limitation and, as to RFP Nos. 16 and 17, simply as a catch-all in the

event that the first 15 RFPs' lengthy descriptions of documents sought may have missed something.

But the Court cannot accept p202's assertions that these documents requests, on the whole, do not seek information relevant for the underlying litigation. They clearly do seek production of admissible evidence or evidence that is reasonably calculated to lead to the discovery of admissible evidence in light of the claims and defenses raised in the pending litigation between Andra and JDA. *See Wiwa*, 392 F.3d at 820. Neither does the Court believe that quashing the subpoena entirely is proper although some of its document requests are overbroad, where, "[g]enerally" – and the Court finds here – "modification of a subpoena is preferable to quashing it outright." *id.* at 818.

And searching for and producing any more documents or ESI – including from the Office 365 server that apparently stores p202's emails and that p202 has not yet searched – certainly will impose some burden on and expense for p202. But that is the natural and expected consequence of being properly served with a Rule 45 document subpoena as an entity that clearly has relevant information for a lawsuit to which it is not a party. And p202 has not otherwise shown that the burden of further complying with the subpoena would be unreasonable or oppressive or, that is, unduly burdernsome. That p202 does not have a dedicated IT specialist for litigation purposes – which makes it just like most parties and non-parties to litigation in federal court – and uses a cloud-based email server does not show that responding to the subpoena through its personnel's devotion of time and effort or hiring a discovery-related vendor

imposes an undue burden. Neither does p202's belief that compliance will require it to spend thousands of dollars support a finding that compliance is unduly burdensome or expensive.

At the same time, Federal Rule of Civil Procedure 26(b)(2)(C)(i) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

Balancing all of these considerations and requirements, the Court will order that the subpoena is modified to require p202 to search for and produce only documents, including ESI, that are not privileged and that are responsive to the following modified requests, excluding communications between p202, on the one hand, and Andra or JDA, on the other, as well as any documents prepared or generated by Andra:

> 1. Each document discussing or describing the nature or scope of p202's contractual obligations to Andra and/or Andra's contractual obligations to p202 in connection with or otherwise relating in any manner whatsoever to the Project.
> 2. Each document discussing or describing any disagreement or dispute between p202 and Andra regarding the nature, scope, and/or performance of p202's contractual obligations to Andra or of Andra's

contractual obligations to p202 in connection with or otherwise relating in any manner whatsoever to the Project.

3. Each document discussing or describing p202's candidacy for the role or position of Project Manager (as that term is described in the SOWs) for the Project, experience, qualifications, and/ or capacity to serve in that role or position, and/or selection for that role or position, including but not limited to each document discussing or describing:

a. p202's efforts, if any, to be selected by Andra to serve as Project Manager for the Project, including but not limited to any curricula vitae, resumes, marketing materials, recorded presentations, presentation materials, meeting minutes, notes, or communications referring or relating to any such efforts;

b. Andra's efforts, if any, to engage p202 to serve as Project Manager for the Project, including but not limited to any recorded presentations, presentation materials, meeting minutes, notes, or communications referring or relating to any such efforts;

c. p202's prior experience, if any, providing services of the types that were or would be required of the Project Manager in the SOWs and/or in any agreement between p202 and Andra wherein it undertook to serve as Project Manager, including but not limited to any curricula vitae, resumes, marketing or presentation materials referring or relating to any such prior experience and/or any contemporaneous self-assessment by p202 of whether it had sufficient experience to undertake the role or position of Project Manager for the Project, and any communications with Andra regarding same;

d. p202's capacity (in terms of time, personnel, and/ or other resources) to fully, faithfully, efficiently, and/or timely perform the services that were or would be required of the Project Manager in the SOWs and/or in any agreement between p202 and Andra wherein it undertook to serve as Project Manager for the Project, including but not limited to any communications with Andra regarding its capacity to serve in that role or position and/ or any contemporaneous self-assessment by p202 of whether it had sufficient capacity to undertake that role or position for the Project; and/ or

e. Andra's deliberation and/or decision to select p202 to serve as Project Manager for the Project, including but not limited to any communications referring or relating to same.

4. Each document discussing or describing billing or payment for services rendered or expenses incurred by p202 in connection with or otherwise relating in any manner whatsoever to the Project, including but not limited to each document referring or relating to (a) any of p202's billed or billable fees for such services, (b) any payment, non-payment, adjustment, or refund of any such fees and/ or expenses, (c) any

-28-

disagreement or dispute between p202 and Andra regarding any such fees or expenses, and (d) any proposed or actual resolution of any such disagreement or dispute.

5. Each document discussing or describing any evaluation, assessment, investigation, analysis, test, report, research, or other diligence conducted, performed, prepared, or composed by Andra and/or by p202 or any third party on Andra's behalf on or before March 30, 2012, or any advice, recommendation, comment, or explanation that p202 or any third party gave to Andra on or before March 30, 2012, regarding (a) either or both of the Licensed Products, including their suitability for Andra' s business purposes, (b) any potential risks, benefits, advantages, or disadvantages of entering into either or both of the SLSAs, (c) any of provisions of either or both of the SLSAs, including those duties allocated to Andra therein, such as Andra's duty to "assign a representative who shall have principal responsibility for overseeing and managing the performance by such party under this Agreement and who shall be the primary point of contact for and person authorized to issue to and receive communications from the other party in relation to the implementation process," and to "mutually develop ... one or more Statements of Work," and/ or (d) RedPrairie's expertise, qualifications, capabilities, reputation, and/or suitability to implement the Licensed Products for Andra and/or the selection of RedPrairie to serve in that capacity.

6. Each document discussing or describing any evaluation, assessment, investigation, analysis, report, research, or other diligence conducted, performed, prepared, or composed by Andra and/or by p202 or any third party on Andra's behalf, or any advice, recommendation, comment, or explanation that p202 gave to Andra, regarding:

a. any potential risks, benefits, advantages, or disadvantages of entering into either or both of the SOWs;

b. any of the provisions of either or both of the SOWs, including, without limitation, each duty allocated therein to Andra and/or its Project Manager and/or each of the explicit assumptions set forth within the SOWs and upon with the SOWs were predicated;

c. the quantum of personnel, time, and/or other resources that Andra and/or p202 would need to devote to the Project in order to satisfactorily perform all or any of the duties allocated to either or both of them in the SLSAs, in the SOWs, and/or in any agreement between them referring or relating to the Project; and/or

d. The hiring or potential hiring of additional personnel at Andra and/or p202 to satisfactorily perform all or any of the duties allocated to either or both of them in the SLSAs, in the SOWs and/or in any agreement between them referring or relating to the Project.

7. Each document discussing or describing the amount of time expended by p202 in the performance of each or all of p202's duties as Project Manager for the Project and/or the performance of each or all of Andra's duties as delineated in the SOWs, including but not limited to any logs, time sheets, or other time records prepared by or on behalf of any p202 personnel, representatives, or agents that refer or relate to his, her, or their performance of such duties.

8. Each document prepared by p202 discussing or describing the scheduling of and/or progress in the performance of those duties allocated to Andra and/or p202 in the SLSAs and/or in the SOWs.

9. Each document discussing or describing (a) the dates on which p202 was scheduled or obligated to deliver and/or the dates on which p202 actually delivered website content including creative elements, product and lifestyle imagery, HTML, and CSS deliverables to RedPrairie/JDA, (b) precisely what website content, i.e., wireframes, was delivered to RedPrairie/JDA on each of the dates on which a delivery occurred, and (c) any delay in p202's creation and/or delivery of any website content to RedPrairie/JDA and/or the reason(s) for any such delay.

11. Each document discussing or describing p202"s and/or Andra's control over, maintenance of, and/or ability to modify Andra's then existing technology platform, including Andra's then existing websites, throughout the course of the Project.

12. Each document discussing or describing Andra's decision to cease paying and/or doing business with JDA.

13. Each document discussing or describing the implementation after March 2013, if any, of any new front office and/or back office software applications for Andra's online retail clothing businesses.

14. Each document discussing or describing Andra's abandonment of its plan to incorporate Accellos warehousing/warehouse management software, or a component of such software, into its new technology platform in favor of RedPrairie's warehousing/warehouse management software application after entering into the SOWs, including but not limited to any document referring or relating to any assessment, review, report, description, or explanation of the impact of that decision on the costs and/or duration of the Project and/or the need to enter into a change order to memorialize any such alteration to the cost and/or duration of the Project.

The Court grants the motion to quash the subpoena's RFP Nos. 10, 15,16, and 17.

With these modifications, the Court finds that cost-shifting or deviation from the general assumption that the complying party bears the costs of production is not warranted under all of the circumstances here, including p202's level of involvement in the project at issue in the underlying litigation. Courts that have considered shifting costs of compliance with a subpoena to the requesting party have noted that "Rule 45 provides additional protections to nonparties to ensure they do not suffer an undue burden or significant expense resulting from compliance" and that, "[i]n balancing these protections against a party's need for discovery and the general assumption that the complying party bears the costs of production, courts have used a multi-step inquiry to determine the equity of shifting costs," the factors of which "include: '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.'" *Bell*, 2014 WL 1630754, at *12 (quoting *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928-29 (N.D. Ill. 2010)).

Additionally, the Court finds that, by producing the documents in non-readable PDF format without the metadata specified by the subpoena's instructions, and failing to serve any written objections to those instructions, p202 failed to comply with Rule 45(a)(1)(C) and 45(e)(1)'s requirement to comply with the subpoena's specification of a form for producing ESI. *See* Dkt. No. 1-2. Accordingly, the Court will grant Defendant's motion to compel p202, at its own expense, to reproduce the ESI that p202 has previously produced in a form and manner that complies with the subpoena's

-31-

instructions for producing ESI. But this required reproduction excludes the ESI previously produced in the Bates ranges specified in JDA's January 28, 2015 proposal.

The Court further finds that sanctions are not warranted or required under Rule 45(d)(1). Defendant had a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court "must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). But Rule 45(d)(1) does not require that the Court impose sanctions any time that it modifies or quashes a subpoena as overbroad or imposing some undue burden but rather where the party issuing the subpoena failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Here, given the relevance of the documents sought as a general matter and Defendant's offer to limit the scope of the requests, as well as p202's failure to meet its burden to show undue burden other than insofar as some of the requests are facially overbroad, the Court does not find that Defendant failed to take reasonable steps to avoid imposing undue burden or expense on p202.

The Court finds that, where the subpoena was facially overbroad and Defendant's Cross-Motion to Compel has been granted only in part, the parties should bear their own costs in connection with the disputes over compliance with the subpoena. Here, the Court finds that, considering all of the circumstances presented, an award of Defendant's expenses is not warranted or appropriate where, among other

things, p202 was substantially justified in resisting the overbroad scope of the document requests.

## Conclusion

For the reasons explained above, the Court GRANTS in part and DENIES in part projekt202, LLC's Motion to Quash Subpoena to Produce Documents [Dkt. No. 1] and Defendant JDA Software Group, Inc.'s Cross-Motion to Compel [Dkt. No. 11] and ORDERS that p202 must comply with the subpoena as modified to the extent and in the manner described above.

SO ORDERED.

DATED: April 13, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE